**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED AUTOMOBILE WORKERS LOCAL 259 PENSION FUND et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLATINUM VOLKSWAGEN, LLC, <br><br> Defendant. | Civil Action No. 14-5803 (ES) (JAD) <br><br> **OPINION** |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant Platinum Volkswagen, LLC's ("Defendant") Motion for Attorneys' Fees. (ECF No. 13). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Defendant's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Defendant's Motion for Attorneys' Fees, (ECF No. 13), is **DENIED**.

**I.     BACKGROUND**

Plaintiffs United Automobile Workers Local 259 Pension Fund and United Automobile Workers Local 259 Social Security Department (collectively "Plaintiffs") commenced this action against Defendant on September 18, 2014 seeking "to compel a payroll audit of a contributing employer to multi-employer plans pursuant to the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. §1001, *et. seq.*, and the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. §185(a)." (Compl., ECF No. 1, at 1). On November 4, 2014 Defendant filed a Motion to Dismiss the Complaint in lieu of an Answer

1

arguing, among other things, that the case should be dismissed because there is no case or controversy. (ECF No. 4). After reviewing the parties' submissions, the Honorable Esther Salas, U.S.D.J., concluded that the case was not ripe for adjudication and the Court, therefore, lacked subject matter jurisdiction over the case. (ECF No. 12, at 1-2). Accordingly, Judge Salas granted Defendant's motion to dismiss without prejudice and afforded Plaintiffs the opportunity to file an Amended Complaint if and when the dispute became ripe. (Id. at 2).

On July 17, 2015, Defendant filed the instant Motion to Attorneys' Fees seeking an amount not less than $10,080.00 pursuant to 29 U.S.C. § 1132(g). (Def. Br., ECF No. 13-4, at 1-2). Plaintiffs opposed the Motion arguing, among other things, that this action falls under 29 U.S.C. § 1132(g)(2), "which only permits the award of fees for the Plaintiffs" and "Defendant['s] are not entitled to discretionary fees under 29 U.S.C. § 1132(g)(1)." (Id. at 2, 4).

## II. LEGAL STANDARD AND ANALYSIS

29 U.S.C. § 1132(g)(1) states, "[i]n any action under this subchapter (<u>other than an action described in paragraph (2)</u>) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added). Section (g)(2), on the other hand, states, in pertinent part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan <u>to enforce section 1145</u> of this title in which a judgment in favor of the plan is awarded, the court <u>shall award the plan</u> . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2)(D) (emphasis added). Here, Defendant argues that it is entitled to attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). (Def. Rep. Br., ECF No. 15). Plaintiffs argue that "[b]y seeking to compel the Defendant, an employer who is obligated to make contributions to the Plaintiff multiemployer plans under the terms of a collective bargaining agreement, Plaintiffs sought to insure that Defendant was upholding its obligations under section 1145. Thus, this

lawsuit was an action 'to enforce section 1145' and falls under 29 U.S.C. § 1132(g)(2) and not 29 U.S.C. § 1132(g)(1)." (Pls. Opp. Br., ECF No. 14, at 3). Defendant on the other hand argues that "a litigation does not proceed under 29 U.S.C. § 1132 (g)(2), when it is not commenced pursuant to 29 U.S.C. § 1145 <u>precisely to compel an employer to make contributions</u>." (Def. Rep. Br., ECF No. 15, at 4) (emphasis added). Defendant argues that this matter "concerned access to records in Defendant's custody sought by Plaintiffs to complete their audit. This case does not concern the failure by Defendant to make necessary contributions, and Plaintiffs' arguments otherwise are self-serving, speculative, and not found in the record." (<u>Id.</u>). As such, Defendant maintains that this action is governed by 29 U.S.C. § 1132(g)(1), which allows the court to award attorneys' fees to either party in its discretion. <u>See</u> 29 U.S.C. § 1132(g)(1).

"As in all such cases, we begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 251 (2010) (quoting <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167 (2009) (internal quotation marks omitted)). The "plain and unambiguous statutory language" must be enforced "according to its terms." <u>Hardt</u>, 560 U.S. at 251. In interpreting 29 U.S.C. § 1132's plain language, this Court finds that this matter is governed by 29 U.S.C. § 1132(g)(1), and therefore, fees are discretionary.

### a. 29 U.S.C. § 1132(g)(1) and 29 U.S.C. § 1132(g)(2)

The plain language of the statute indicates that while 29 U.S.C. § 1132(g)(1) permits the Court to award attorneys' fees on a discretionary basis to either party, 29 U.S.C. § 1132(g)(2) mandates them for a prevailing plaintiff bringing a cause of action under 29 U.S.C. § 1145. <u>See</u> <u>Hardt</u>, 560 U.S. at 252 ("§ 1132(g)(1) expressly grants district courts 'discretion' to award attorney's fees 'to either party.' That language contrasts sharply with § 1132(g)(2), which governs

the availability of attorney's fees in ERISA actions under § 1145 (actions to recover delinquent employer contributions to a multiemployer plan). In such cases, only plaintiffs who obtain 'a judgment in favor of the plan' may seek attorney's fees") (emphasis added) (internal citations omitted); see also United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 285-86 (3d Cir. 2007) ("It is undisputed that ERISA mandates an award of reasonable attorneys' fees when, as here, a fund prevails in an action for unpaid contributions pursuant to 29 U.S.C. § 1145.") (citing 29 U.S.C. § 1132(g)(2)(D)) (emphasis added).

The parties maintain that the resolution of this matter will hinge on whether this action is governed by 29 U.S.C. § 1132(g)(1) or 29 U.S.C. § 1132(g)(2). In turn, the parties assert that this determination is based on whether this action was brought under 29 U.S.C. § 1145, which states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

While the Complaint does not specifically reference 29 U.S.C. § 1145, it does seek that this Court "[e]nter judgment in favor of the Funds and against the contributing employer for attorneys' fees and costs pursuant to ERISA, 29 U.S.C. Section 1132(g)(2)(D)[.]" (Compl., ECF No. 1, at 8). Whether this action was brought under Section 1145 is, however, irrelevant in light of the plain language of the statute. As noted above, either party is entitled to fees under 29 U.S.C. § 1132(g)(1) on a discretionary basis, unless Section 1132(g)(2) applies, in which case a defendant must pay "reasonable attorneys' fees and costs" when an action is brought "for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded[.]" 29 U.S.C. § 1145 (emphasis added). The Court need not decide whether this action was brought

in order to enforce Section 1145 because the analysis ends simply by virtue of the fact that a judgment was not awarded in favor of the plan. Judge Salas dismissed this case for lack of subject matter jurisdiction on June 18, 2015, (ECF No. 12), and, therefore, 29 U.S.C. § 1132(g)(2) does not apply.

The plain language of 29 U.S.C. § 1132(g)(2) does not, however, preclude a defendant from recouping attorneys' fees under 29 U.S.C. § 1132(g)(1).

> As originally enacted in 1974, § 1132(g) simply provided that "[i]n any action . . . by a . . . fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The section was amended in 1980 by relabeling the previous text as subsection (1), adding current subsection (2), and adding an exception for actions under subsection (2) to subsection (1).

Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-06 (2d Cir. 1995) (citing Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co., 767 F.2d 1170, 1172 n.3 (5th Cir.1985); Central States, Southeast & Southwest Areas Pension Fund v. Alco Express Co., 522 F. Supp. 919, 921-23 (E.D. Mich. 1981)). It does not appear that Congress intended to preclude a defendant from recovering fees under 29 U.S.C. § 1132(g)(1) just because an action was brought under 29 U.S.C. § 1145.

> The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection. The bill imposes a Federal statutory duty to contribute on employers that are already contractually obligated to make contributions to multiemployer plans. A plan sponsor that prevails in any action to collect delinquent contributions will be entitled to recover the delinquent contributions, court costs, attorney's fees, and double interest on the contributions owed. The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies.

Central States, Southeast & Southwest Areas Pension Fund, 522 F. Supp. at 928 (citing Staff of Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S.1076, The Multiemployer

Pension Plan Amendments of 1980: Summary and Analysis of Consideration (Comm. Print 1980) at 43-4)). Subsection (2) ensures that plaintiffs who meet particular requirements are awarded attorneys' fees, but does not prevent attorneys' fees for defendants when an action is brought under 29 U.S.C. § 1145 and there is no judgment awarded in favor of the plan.[1] If, therefore, an action does not fall under the exception of subsection (2), then subsection (1) applies. As noted above, this action is not governed by 29 U.S.C. § 1132(g)(2) because there was no judgment awarded in favor of the plan. As a result, 29 U.S.C. § 1132(g)(1) applies and fees are discretionary.[2]

### b. Success on the Merits

Before determining whether this Court can award discretionary fees to the Defendant under 29 U.S.C. § 1132(g)(1), this Court must first determine whether Defendant has achieved some measure of success on the merits. See Hardt, 560 U.S. at 245 ("[A] court 'in its discretion' may award fees and costs 'to either party,' as long as the fee claimant has achieved 'some degree of

---

[1] As quoted above, the Supreme Court in Hardt, stated that the language of 29 U.S.C. § 1132(g)(1) "contrasts sharply with § 1132(g)(2), which governs the availability of attorney's fees in ERISA actions under § 1145 (actions to recover delinquent employer contributions to a multiemployer plan). In such cases, only plaintiffs who obtain 'a judgment in favor of the plan' may seek attorney's fees. § 1132(g)(2)(D). The contrast between these two paragraphs makes clear that Congress knows how to impose express limits on the availability of attorney's fees in ERISA cases." Hardt, 560 U.S. at 252. The Supreme Court, however, mentions § 1132(g)(2) in dicta. The holding in Hardt was based entirely on whether the plain language of the statute contemplates attorneys' fees for non-prevailing parties. The Court did not hold that § 1132(g)(2) is the only provision that governs the availability of attorneys' fees in ERISA actions under 29 U.S.C. § 1145, but rather explained that it governs the availability of fees under § 1145 when a plaintiff obtains a judgement in favor of the plan.

[2] Plaintiffs cite to Trucking Employees of N. Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co., 130 F.R.D. 314 (D.N.J. 1989) and note that it stands for the proposition that "only an action to collect delinquent contributions was an action 'to enforce section 1145' and thus fees under section 1132(g)(2) were only available where there was a claim for unpaid contributions." (Pls. Opp. Br., ECF No. 14, at 4 n.2). Plaintiffs argue that Section 1145 is more expansive because "[n]othing in the language of section 1145 limits its application to known delinquencies . . . [and therefore] Trucking Employees was wrongly decided and should not be followed by this Court." (Id.). This Court need not engage in a discussion to determine whether or not Trucking Employees was "wrongly decided" because this Court's analysis and holding is based on other grounds.

success on the merits'") (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)). "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" Hardt, 560 U.S. at 255 (quoting Ruckelshaus, 463 U.S. at 688, n.9). While the United States Supreme Court made it clear in Hardt that procedural victories are insufficient to establish eligibility for attorneys' fees under 29 U.S.C. § 1132(g)(1), it did not resolve what a party must achieve or obtain to demonstrate "some success on the merits." Perelman v. Perelman, 2014 WL 1413948, at *4 (E.D. Pa. Apr. 14, 2014) aff'd, 793 F.3d 368 (3d Cir. 2015). "Thus, district courts have been left to determine what constitutes success on the merits in each individual case." (Id.).

Plaintiffs argue that Judge Salas' June 18, 2015 Order dismissing the case without prejudice "was a purely procedural ruling" because "the dispute was not ripe for adjudication based upon the Defendant's assurances that it 'will continue to cooperate' with the audit process" and "[t]here was no decision on the merits of the Plaintiffs' claims." (Pls. Opp. Br., ECF No. 14, at 5). Moreover, "the Letter Order expressly states that the dismissal is 'without prejudice' and stated that Plaintiffs may file an Amended Complaint 'if and when there is a ripe dispute.'" (Id.). Plaintiffs further argue that courts commonly interpret dismissal for lack of ripeness as a purely procedural victory. (Id.) (citing United States v. Konior, No. 13-cr-275 (AKH), 2014 WL 7180246, at *3 (S.D.N.Y. Nov. 24, 2014) (referring to the lack of ripeness to defendant's motion as a "procedural defect"); Robinson v. Horizon Blue Cross-Blue Shield of New Jersey, No. 12-cv-2981 (ES) (JAD), 2013 WL 6858956, at *4 (D.N.J. Dec. 23, 2013) ("While plaintiff's motion may be properly denied based on its procedural defect and due to lack of ripeness…"); Harvey v.

Christopher, No. 07-115, 2009 WL 331304, at *3 (V.I. Jan. 22, 2009) (referring to a dismissal on the basis of ripeness as a "[d]ismissal of an appeal on procedural grounds"); MHC Fin. Ltd. P'ship v. City of San Rafael, No. 00-3785 (VRW), 2006 WL 3507937, at *6 (N.D. Cal. Dec. 5, 2006) (referring to the argument that a claim is not ripe as the assertion of a "procedural defect" in the claim)).

Defendant argues that "this case was dismissed precisely because this Court correctly concluded that at all times Defendant stood (and remains), willing and able to provide Plaintiffs access [to records held by Defendant, which related to the pension, and health and welfare funds]. This litigation did not concern the failure of Defendant to make contributions to the pension, and health and welfare funds." (Def. Rep. Br., ECF No. 15, at 2). Because Judge Salas did not address the merits of Plaintiffs' claims, the dismissal appears to be, at least somewhat, a procedural victory. As such, under the Supreme Court's ruling in Hardt, Defendant is not entitled to attorneys' fees under 29 U.S.C. § 1132(g)(1). In, however, an abundance of caution, this Court has analyzed the discretionary factors under Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983) below and finds that Defendant is still not entitled to attorneys' fees.

### c. Discretionary Fees Under 29 U.S.C. § 1132(g)(1)

In determining whether to award discretionary attorneys' fees under ERISA, courts consider the following factors: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." Ursic, 719 F.2d at (3d Cir. 1983) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980); Iron Workers

Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980); Eaves v. Penn, 587 F.2d 453, 465 (10th Cir. 1978)). The Court shall address each of these factors in turn.

### i. The Offending Parties' Culpability or Bad Faith

"The first Ursic factor favors an award to the prevailing party not only in cases involving 'bad faith' but in other cases as well . . . bad faith normally connotes an ulterior motive or sinister purpose. A losing party may be culpable, however, without having acted with an ulterior motive." McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256 (3d Cir. 1994) (citing Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). This Court notes that this factor does not automatically favor the award of attorneys' fees simply because Plaintiffs did not prevail. See McPherson, 33 F.3d at 257 ("A party is not culpable merely because it has taken a position that did not prevail in litigation."). Defendant argues, however, that "Plaintiffs engaged in bad faith when it prematurely commenced this action, absent subject matter jurisdiction, because there was no case and controversy." (Def. Br., ECF No. 13-4, at 4). Moreover, Defendant argues that notwithstanding its willingness to "provide Plaintiffs with access to the records necessary to complete their audit", "Plaintiffs commenced this dubious case, ostensibly to harass and intimidate . . . [and] cause Defendant to expend money in litigation." (Id.).

Plaintiffs opposed arguing, among other things, that these allegations are "nothing more than conclusory statement[s] about the Funds' alleged motives." (Pls. Opp. Br., ECF No. 14, at 8). To the contrary, Plaintiffs argue that "[i]t is clearly within the Funds' interest to have as cooperative and harmonious a relationship as possible with a contributing employer" and because of "the Defendant's lack of cooperation, the Funds have been forced to expend additional time and resources to complete what should have been a routine payroll audit." (Id.). Finally, Plaintiffs maintain that Defendant has not cited a "scintilla of evidence" that Plaintiffs were culpable or

engaged in bad faith in bringing this action and, therefore, this first factor is does not favor the award of fees. (Id.). This Court agrees.

While Judge Salas dismissed the case because "the audit process still appears to be underway," and "Defendant has represented to the Court that it has 'cooperated and will continue to cooperate,'" (ECF No. 12), the truth of the matter is that this action was initiated because of Defendant's failure to provide Plaintiffs with the information required. (See Compl., ECF No. 1, ¶¶ 19-34). This assessment is not contrary to Judge Salas' ruling that there was no case or controversy at the time this action was commenced. An audit, however, is only as good as the records made available and Defendant was, at the very least, not fully cooperating in furnishing those records. This Court finds that Plaintiffs were not acting in bad faith by commencing this action, but rather were attempting to recoup the information needed for the audit. As such, this factor weighs against awarding attorneys' fees.

### ii. The Ability of the Offending Parties To Satisfy An Award of Attorneys' Fees

Plaintiffs acknowledge "that it has sufficient assets to satisfy an award of fees . . . [but] any award of fees would come out of the assets of the Funds that are held in trust for the benefit of participants and their beneficiaries . . . [which] undermines the legislative goals of ERISA." (Pls. Opp. Br., ECF No. 14, at 9). Defendant argues, on the other hand, that Plaintiffs argument is disingenuous because "Plaintiffs impulsively commenced this premature and baseless action, and spent money in furtherance thereto on filing costs and attorneys' fees, which also would have" come out of the same funds. (Def. Rep. Br., ECF No. 15, at 9). "As such, Plaintiffs cannot contemporaneously argue that it is permissible to spend money, otherwise held for the fund's participants, by initiating a patently defective and otherwise unnecessary litigation, but not pay reasonable attorneys' fees to Defendant when permitted under ERISA." (Id.). This Court need

not, however, consider where the funds come from in analyzing this factor. See Tomasko v. Weinstock, 255 F. App'x 676, 682 (3d Cir. 2007) (noting that the second factor's "focus should be on whether [the offending party] has the means to pay an award to [the prevailing party]"). In light of Plaintiffs' concession, this factor supports the award of attorneys' fees.

### iii. The Deterent Effect of an Award of Attorneys' Fees Against The Offending Parties

With regard to this factor, Defendant argues that "granting Defendant's motion for attorneys' fees will likely circumscribe Plaintiffs' impulsive behavior to commence litigation. Plaintiffs will be incentivized to coordinate with Defendant follow-up audits, as opposed to reflexively turning to litigation when an initial audit is incomplete." (Def. Br., ECF No. 13-4, at 5). Plaintiffs oppose, arguing that this litigation was not commenced as a result of being impulsive, but rather after a "six week long email exchange in which the Funds' counsel repeatedly asked the Defendant's counsel to confirm the specific records required by the auditor would be made available and the Defendant's counsel avoiding a direct answer to the question." (Pls. Opp. Br., ECF No. 14, at 9). Plaintiffs further note that this lawsuit was not commenced until two months after Plaintiffs provided Defendant's counsel with the list of documents needed and agreed to have the matter administratively terminated until the audit was complete, but Defendant refused. (Id. at 9-10). Additionally, Plaintiffs argue that "[t]he Funds have an obligation to collect any and all delinquent contributions. The best way to determine whether an employer is delinquent is through a random payroll audit program. When an employer plays games with the audit process the Funds have no choice but to take legal action to enforce its right to an audit and to protect the Funds' assets." (Id. at 10).

Defendant replied arguing that,

11

> At all times Defendant advised Plaintiffs that all documents necessary completion of the audit were in its counsel's office, and have been, and continue to be, available for review and inspection. More so, on June 10, 2015, following the telephonic conference with this Court, Plaintiffs' auditors only spent a few shorts hours trying to complete an audit that they started nearly a year before. Defendant provided all the documents initially provided on June 30, 2014 (which were undisturbed since the previous visit), plus additional documents requested by Plaintiffs. Instead, Plaintiffs failed to act diligently and reasonably to complete the audit instead accusing Defendant of "playing games." At no point were the auditors disturbed or blocked from completing to audit.

(Def. Rep. Br., ECF No. 15, at 9).

Notably, "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990). To deter Plaintiffs from bringing an action that sought to promote those interests would be contrary to ERISA's enactment. As such, this factor weighs against the award of attorneys' fees.

### iv. The Benefit Conferred on Members of the Pension Plan as a Whole

The fourth Ursic factor "requires consideration of the benefit, if any, that is conferred on others by the court's judgment." McPherson, 33 F.3d at 256. Defendant initially argues that this factor does not apply. (Def. Br., ECF No. 13-4, at 5). Plaintiffs, however, argue that this factor clearly weighs against the award of attorneys' fees in light of ERISA's legislative history. (Pls. Opp. Br., ECF No. 14, at 11) (citing Coar v. Kazimir, 990 F.2d 1413, 1425 (3d Cir. 1993) ("ERISA['s] [ ] broad purpose . . . is to protect and ensure the availability of pension funds for retirees"); Einhorn v. M.L. Ruberton Const. Co., 632 F.3d 89, 98 (3d Cir. 2011) ("because ERISA [is a] remedial statute[], [it] should be liberally construed in favor of protecting the participants in employee benefit plans")).

Plaintiffs maintain that, "[e]very dollar awarded to Defendant would be another dollar of money held in trust for the benefit of plan participants or beneficiaries that would be paid instead to Defendant's attorneys." (Pls. Opp. Br., ECF No. 14, at 11). Finally, Plaintiffs argue that "[w]hile this factor does not preclude any award of fees against an ERISA plan, it was included in the Ursic factors to assure that such an award of fees are reserved for truly egregious cases in which this factor is substantially outweighed by the others." (Id.). Defendant replied arguing that this factor is either neutral or inapplicable. (Def. Rep. Br., ECF No. 15, at 10). Specifically, Defendant argues that Plaintiffs' argument is generalized "against ever award attorneys' fees to an ERISA defendant, which is contrary to the plain meaning of the statute." (Id.).

This Court finds that this factor weighs against awarding attorneys' fees. Specifically, the members of the pension plan could not conceivably receive a benefit if Defendant were awarded attorneys' fees. To the contrary, as Plaintiffs note, awarding attorneys' fees in this circumstance would put the members of the pension plan at a disadvantage. As such, this factor weighs against the award of attorneys' fees.

v. **The Relative Merits of the Parties' Position**

"[C]oncerning the relative merits of the parties' positions, [the court] must determine whether 'the losing party's position [was] substantially justified and taken in good faith, or was that party simply out to harass its opponent?'" Teamsters-Employers Local 945 Pension Fund v. Waste Mgmt. of New Jersey, Inc., No. 11-902 (FSH), 2011 WL 3417890, at *3 (D.N.J. Aug. 3, 2011). "The fact that the [losing party's] position has not been sustained, does not alone put the fifth factor in the column favoring an award." McPherson, 33 F.3d at 258. "Only where there is a 'complete lack of evidence' or where a clearly untenable position has been taken will claims be deemed to be so lacking in relative merit that the fifth Ursic factor is satisfied." Shah v. Broadspire

13

Servs., Inc., No. 06-3106, 2007 WL 3124707, at *3 (D.N.J. Oct. 23, 2007) (quoting McPherson, 33 F.3d at 258). Plaintiffs argue that "[t]he funds filed this lawsuit because they in good faith believed, and continue to believe, that the Defendant is seeking to avoid the cooperation necessary for the Funds' auditor to complete the audit." (Pls. Opp. Br., ECF No. 14, at 12). Defendant on the other hand argues that "Plaintiffs hastily commenced this litigation where subject matter jurisdiction was lacking. Conversely, at all times Defendant cooperated with Plaintiffs' efforts to audit the records relating to the pension, and health and welfare fund." (Def. Rep. Br., ECF No. 15, at 10). This Court will not render an advisory opinion regarding the merits of Plaintiffs claims, but will note that Judge Salas dismissed Plaintiffs Complaint without prejudice with the ability to file an Amended Complaint if and when there is a ripe dispute. (See ECF No. 12). This Court does not believe that Plaintiffs acted in bad faith when initiating this lawsuit. This fifth and final factor, therefore, does not weigh in favor of awarding attorneys' fees and shall be considered neutral in light of the procedural posture of this case.

### III. CONCLUSION

On balance, the first, third, and fourth factors weigh against an award of attorneys' fees, while the second factor weighs in favor of the award, and the fifth factor is netural. In light of the majority of the Ursic factors weighing against the award of attorneys' fees, and for the forgoing reasons, Defendant's Motion for Attorneys' Fees, (ECF No. 13), is **DENIED**. An appropriate form of Order accompanies this Opinion.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Esther Salas, U.S.D.J.